214 So.2d 857

**Thomas C. REED, Jr.**

v.

**SEARS, ROEBUCK & COMPANY.**

**3 Div. 235.**

Court of Appeals of Alabama.

June 25, 1968.

Rehearing Denied Aug. 27, 1968.

Warren S. Reese, Jr., Montgomery, for appellant.

Newman C. Sankey, Montgomery, for appellee.

PRICE, Presiding Judge.

This is a suit by Sears, Roebuck and Company, a corporation, against Thomas C. Reed, Jr., upon an account and for merchandise, goods and chattels sold by the plaintiff to defendant. Trial was by the court without a jury, resulting in a verdict for plaintiff in the sum of $577.73. Defendant appeals.

The tendencies of the evidence for plaintiff are that a woman purchased and charged to Mr. Reed's account various items of merchandise, using a "charge-plate" issued to Thomas C. Reed, Jr., signing the sales ticket with the name "Mrs. Tom Reed" or "Mrs. Tom Reed, Jr." Most of the items were purchased at the Sears Montgomery store. Some were purchased from a Sears store in Phoenix, Arizona.

Mr. J. B. Dismukes, Jr., collections manager of Sears' Montgomery store, testified he is one of the custodians of the collection account records of said company; that he is familiar with such records and with the account of Thomas C. Reed or Thomas C. Reed, Jr., as it appears on the company's records and that the amount shown on the records as due on that account is $577.73. He stated: "This is what we call a Sears revolving charge account. Credit cards are issued and it is based on charges made over a period of time through the use of this charge account." The records are kept in the regular course of business. "The daily detail is comprised of invoices of the sales tickets—it is comprised of copies of the sales tickets involved and payment receipts for payments made to the store and they are filed daily in our open files and then once a month these records are billed and then microfilmed to give us a permanent record. * * * The original copy of the ticket written at the time of the sale is retained by the customer. * * * After the date * * * of the sale and the store closes these tickets (carbon copies) all are forwarded to the auditing department where they are reviewed by auditors for errors in the arithmetic and then the day following that these tickets are then forwarded to the credit department to be filed. When the account is billed on the 23rd of the month, copies of these tickets are placed with the itemized statement which, in turn, has to be microfilmed and is mailed to the customer to provide the customer with a record of what his current balance is and what constitutes that charge to the balance in the last month." Microfilm records of the account of Thomas C. Reed, Jr., were made in the normal course of business.

The witness testified he had reviewed the account of Thomas C. Reed and had with him in court the "microfilm records of the transaction slips." These microfilmed records were shown to the court on a microfilm machine. The dates involving the account were from the 9th of September, 1965, through December 28, 1965.

This witness further testified he discussed the account with a man who was introduced to him as Thomas Reed in the offices of the Reed Transfer and Storage Company, in Montgomery. "I explained to him that I was contacting him concerning the delinquent condition of this account and he responded that he had not been aware that it was delinquent but that he would take care or take steps to bring it up to date." Mr. Reed did not deny the correctness of the account. Witness had a second conversation with Mr. Reed in the offices of the Reed Transfer and Storage Company. He had informed Mr. Reed that he had learned one of the credit cards had been returned and Mr. Reed returned the card to him. When asked what action he was going to take to bring the account up to date defendant said there were some men in his office and he was about to close a deal which would enable him to bring the account up to date within approximately one week. Sometime after this time witness went to defendant's home. After stating his reason for being there Mr. Reed said he had turned over to his attorney all of his affairs involving his accounts payable and advised witness to contact his attorney.

On cross examination the witness testified that as Collections Manager for Sears Roebuck he was responsible for all collections work involving delinquent accounts; that the Company has a Credit Manager and at one time had an Assistant Credit Manager but none at present. Ordinarily witness assists in any problem involving a delinquent account, but there are occasions, because of unusual circumstances when he receives an account before it becomes delinquent. He did not write the charge slips involved here, has no personal knowledge of how they were actually made and did not see them handed to the credit personnel. When the auditing department turns the tickets over to the credit department there is included an adding machine tape totalling all of the tickets. The bookkeepers make an additional tape to see if they have the same balance and the tickets are turned over to the recappers to be sorted alphabetically, and the alphabetical groupings are taped to make sure the total is the same. The alphabetical groups are then filed into each account. This is partially under his supervision. It is his duty to supervise the recappers and bookkeepers and to assist if there is an error, but generally speaking he does not supervise the bookkeeping department. He has not reviewed each ticket and does not know whether they are correct and knew nothing about them before they were turned over for collection. All of these tickets were signed by Mrs. Reed. The Company's records indicated that Mr. Reed was unmarried. The signature does not show on the microfilm on some of the tickets. The witness can not testify of his own knowledge who purchased the merchandise. The woman admitted obtaining it. He knew she was not Mrs. Tom Reed. There is no ticket signed by Tom Reed. The witness has no personal knowledge of how the records were kept in Sears Phoenix, Arizona store.

The records of Sears indicated defendant was unmarried at the time the charges were made. It was stipulated between the parties that Mr. Reed was married December 24, 1965.

▆▆ The microfilm was properly before the trial court under the testimony of Mr. Dismukes. Title 7, Section 415, Code of Alabama, 1940; Hall v. Dexter Gas Company, 277 Ala. 360, 170 So.2d 796.

Defense Counsel filed a petition in this court requesting an order to the "Circuit Court of Montgomery County, Alabama, to send up to this court the microfilm which was exhibited in this cause as shown on page 14 of the Transcript in said cause, although the same was not marked as an exhibit by the court reporter or ordered so marked as an exhibit by the court, the microfilm purports to be a reproduction of the charge tickets or statements against the defendant in this cause."

In an effort to comply with this request, under Rules of the Supreme Court, rule

51, Code 1940, Title 7, Sec. 897, we ascertained that the microfilm and the machine had not been left in the office of the Circuit Clerk but instead had been returned to the office of Sears, Roebuck & Company. Nevertheless, in deference to defendant's request, the microfilm tape and the machine were sent up for our observation and consideration of the sales slips.

But appellant now insists in brief, filed subsequent to the foregoing petition, that because the microfilm was not marked as an exhibit by the court reporter, not introduced into evidence and not turned over to the clerk, it was not before the trial court and could not properly be brought before this court.

■ Page 14 of the transcript shows that the microfilm was offered in evidence and defendant objected. The court overruled the objection but stated that it would be impossible for the reporter to mark the microfilm as an exhibit. The record shows that the microfilm was demonstrated by a machine and that each sales ticket was fully exhibited to the trial judge. We cannot accord merit to defendant's contention that the microfilm was not introduced in evidence in the trial court.

Because of the argument in brief that the microfilm tape could not properly be brought before this court because it was not filed in the Clerk's office the writer refrains from commenting as to our viewing of the microfilm tape of the sales tickets.

■ Where it appears that the trial court had the benefit of documents or exhibits that are not presented to this court we cannot review the correctness of the court's rulings admitting the microfilm into evidence, nor can we review the question of whether the judgment was contrary to the evidence. Childs et al. v. Julian et al., 241 Ala. 249, 2 So.2d 453; Phillips v. Jackson, 190 Ala. 586, 67 So. 450.

It is further insisted that the burden is upon appellee to show the authority of the person who signed the charge tickets and that there is no testimony of agency or any authority on the part of such person to bind the defendant.

In Neiman-Marcus Company v. Viser (1962 La.App.), 140 So.2d 762, the husband gave his charge-plate to his wife before their separation. After she was separated from her husband the wife made purchases on her husband's account, using the charge-plate issued to the husband by the plaintiff. The husband denied the relationship of principal and agent between him and his wife in the purchase of the merchandise. The court held: "Our conception of the law is that, when one clothes another with apparent authority to act for him, insofar as a third party is concerned, he will not be permitted to deny that fact; that is, where a person, by his acts or conduct, has knowingly caused or permitted another to appear as his agent to the injury of third persons, who have dealt with the apparent agent in good faith and in the exercise of reasonable prudence, he will be estopped to deny the agency. * * * where the husband authorized and permitted the wife to use his name and credit to obtain merchandise from plaintiff, she was acting in the capacity of his agent and he is, therefore, liable, as principal, for the purchase price of the merchandise. * * * The delivery of the 'Charga-Plate' by Viser to his wife constituted an authorization for the purchases made by her and for their charge to his account." See also Magnolia Petroleum Co. v. McMillan (1943 Tex.Civ. App.), 168 S.W.2d 881 and Goldfield v. Brewbaker Motors, 36 Ala.App. 152, 54 So. 2d 797.

In Jones Store Company v. Kelly, 225 Mo.App. 833, 36 S.W.2d 681, the court held that if the customer gave his charge account coin to a person, intending that the person could purchase on the customer's credit, the debt was the customer's debt. But that the customer is not liable if another, wrongfully, without the customer's knowledge, gains possession of the numbered charge account coin and uses it in

making purchases. That under the evidence presented the question of whether the customer authorized purchases on his credit was for the jury. In that case the sales slips were signed by a "Mrs. G. J. Kelly" and the evidence was that plaintiff knew the defendant was unmarried. The defendant testified he had put the charge coin in his bureau and locked it up and never saw it thereafter, and that after payment of the account was demanded he searched for it but did not find it; that his house was later ransacked, the inference being the coin was taken, but that he did not notify plaintiff of its loss. He denied statements attributed to him by plaintiff to the effect that his housekeeper made the purchases and that he would pay the account.

In the instant case no evidence was introduced by defendant tending to explain the possession of the "charge plate" by the person making the purchases. From the plaintiff's testimony as to defendant's promises to pay the account, which were undenied, we conclude, as was done in the Kelly case, that the court had the right to infer that the possession of the charge-plate by the one who produced it was rightful.

The judgment is affirmed.

Affirmed.

## ON REHEARING

CATES, Judge (concurring specially).

This court, on April 25, 1968, had a microfilm viewer and rolls of microfilm rotated thereon. I viewed some of the microfilmed sales slips purporting to have been signed by a person holding herself out as the putative wife of appellant. I think these microfilmed sales slips are not before this court

Under the strictures of Coleman, J., in Northwestern Mutual Life Ins. Co. v.

Workman, Ala., 214 So.2d 690 (1968), these sales slips were easily capable of being transcribed from the microfilm as exhibited by the "viewer." [1]

The sixth sentence of § 1 of the amended Act to abolish Bills of Exceptions on appeals from the law side of circuit and other courts (Act 97, approved Feb. 9, 1956) reads:

"* * * If the reproduction of documents offered in evidence, such as maps or photographs, be difficult or impracticable, the court reporter shall so certify, and the Clerk shall thereupon attach the original, or a photostatic copy thereof, to the transcript on appeal, and such original or photostatic copy thereof shall be a part of the transcript on appeal. * * *"

This enactment is, albeit ambiguously, repeated in Supreme Court Rule 23:

"No original bill of exceptions or paper read or offered in evidence shall be sent to this court, * * * unless the court reporter certifies that its reproduction is difficult or impossible * * *."

There are decisions to the effect that probative objects and documents seen by the jury are in evidence on the trial even though no ritual of submission is followed. That aspect, however, is not before us on appeal. Cash v. Usrey, 278 Ala. 313, 178 So.2d 91; Rhodes v. Tomlin, 267 Ala. 491, 102 So.2d 904.

Here an assignment of error must connect up with evidentiary matter in the appellate record. Any attempt to salvage after original deliverance of this Court's opinion is too late. Saylor v. State, 42 Ala.App. 666, 177 So.2d 924 (hn. 5, 6), and cases there cited.

1. Random House Dictionary: "Viewer * * * 3. any of various optical devices to facilitate viewing, esp. one that is small and boxlike with a magnifying lens, and sometimes a light source, in which a photographic transparency may be viewed. * * *"

Appellant is the moving party on appeal. Neither appellee nor appellate courts are under any duty to round up stray matters to enable appellant to put forth a case on appeal. Wanninger v. Lange, 268 Ala. 402, 108 So.2d 331; State for Use of Russell County v. Fourth National Bank of Columbus, Ga., 270 Ala. 135, 117 So.2d 145. Indeed, in a civil case appellee's counsel might be subjected to criticism by his client.

Accordingly, on this point in the record before us, I cannot envisage error, much less a scintilla of reversibility. I vote to overrule the application for rehearing.