This is an appeal from a decree of the Family Court of Jefferson County terminating the parental rights of the natural mother, Keitrah Fortenberry, in and to her child, Crystal Fortenberry.
On December 5, 1983 the Department of Pensions and Security (DPS) filed a petition in the family court, alleging that Crystal was a dependent child in that she had been physically, mentally, or emotionally abused by her parents, Keitrah and Alfred Michael Fortenberry. Temporary custody of Crystal was placed with DPS on December 5, 1983. DPS filed a petition for termination of parental rights on October 29, 1984. The family court entered an order on December 10, 1984, terminating the parental rights of the natural mother, Keitrah Fortenberry, and legal father, Alfred Fortenberry, to their child, Crystal. The legal father appeared in family court with his attorney and consented to the termination of his parental rights. The legal father did not appeal the family court's order. The mother, however, appeals the family court's order to this court.
On appeal the mother contends first that the court violated her constitutional rights of due process as protected by the fourteenth amendment in denying her the opportunity to be heard and present witnesses on her behalf, and by prejudging the outcome of the case.
The mother points to two discussions before the court as evidence that she was precluded from presenting her case. The first of these discussions is as follows:
 "MR. HOOPER: Your Honor, I have one witness that I intended to bring. I intended to put on two more witnesses, and they haven't got time to get here today. It wouldn't take long. Well, I can call him and get him here now or in the morning.
"THE COURT: We will just close the case now.
"MR. HOOPER: Until the morning?
 "THE COURT: No, completely. Do you have any witness now, you may put them on.
"MR. HOOPER: I just need to call him.
"THE COURT: Well, he's not here now?
"MR. HOOPER: No, sir, he's not.
"THE COURT: Well, we will close the case now."
As noted above, the court asked the mother's counsel if he had any witness present to testify, and the mother's counsel responded that he did not. When the court then informed the mother's counsel that the case would be closed in the absence of any more witnesses, counsel did not object, nor did he request a continuance.
It is the duty of a party to have her witnesses present and available to testify at the beginning of the trial or to have made prior arrangements with the trial court to have certain witnesses placed on standby so that they could be produced on short notice. To halt or suspend a trial to permit a party to produce a witness in court is discretionary with the trial court. *Page 56 Alonzo v. State ex rel. Booth, 283 Ala. 607, 219 So.2d 858
(1969). Furthermore, in the present case there is nothing to show that the matter complained about was called to the court's attention by objection or other appropriate method; therefore, the court's action in refusing to permit a witness to be called cannot be deemed to be erroneous. Moody v. State ex rel. Payne,295 Ala. 299, 329 So.2d 73 (Ala. 1976). See also Meriweather v.Brown, 390 So.2d 1042 (Ala. 1980); Tiger Motor Co. v. McMurtry,284 Ala. 283, 224 So.2d 638 (1969).
The second conversation which the mother contends shows that she was denied an opportunity to be heard is as follows:
 "THE COURT: Wait just a minute. Do any of y'all object to Mike Fortenberry's mother being in the room?
". . . .
 "THE COURT: Do you have any objection, because you have got the right to exclude anyone that's not a party.
 "MR. STRONG: I'm not going to exclude anyone here. In fact, Mr. Fortenberry can stay.
 "MS. ANDERSON: Is anyone that's in the courtroom going to testify?
"THE COURT: Nobody else is going to testify.
 "MR. STRONG: Now, two DPS workers are going to be testifying, but they are in the courtroom.
"THE COURT: They can stay in."
It appears that the above discussion dealt not with whether any witnesses would be allowed to testify but rather with whether certain individuals should be allowed to remain in the courtroom. We see nothing in the above conversation to show that the court prevented the mother from presenting her case.
The mother contends also that the above exchange established that an agreement existed between her counsel and DPS's counsel that she would be permitted to call her witnesses prior to the testimony of DPS's last two witnesses. However, there is no reference in the above discussion to any such agreement. Nor is there anything in the record to show that the court was aware of any agreement. There being no evidence in the record of this agreement, we cannot consider it. Crowder v. Zoning Board ofAdjustment, 406 So.2d 917 (Ala.Civ.App.), cert. denied,406 So.2d 919 (Ala. 1981).
The mother's inability to produce all the witnesses she desired was due primarily to her failure to have the witnesses in the courtroom ready to testify or to have made prior arrangements with the court to have certain witnesses placed on standby. Also, the conduct of the trial is left to the wise discretion of the trial judge and his decisions in this sphere will not be overturned except for plain and palpable abuse of that discretion. Continental Casualty Co. v. Ogburn, 186 Ala. 398,64 So. 619 (1914). We find no abuse here.
The mother also argues that the court denied her a fair trial in that it prejudged the case. She contends that the court's premature closing of the case and the court's following remarks clearly show its prejudice against her:
 "Q. Doctor, could you state whether or not this child has any permanent injuries, permanent difficulties relating to this burn that she had?
". . . .
"THE COURT: And you're speaking on a physical term?
"MR. STRONG: Yes, sir."
The court's above remarks appear to be for the purpose of clarifying whether the "permanent injuries" refers to that of a physical or emotional nature. The trial court has the right to ask questions of witnesses in order to elicit or clarify certain facts. See Rice v. Hill, 278 Ala. 342, 178 So.2d 168
(1965). Here, the court's remarks do not indicate a predisposition in favor of either party, but rather, indicate a desire to clarify the counsel's question. Further, as we noted above, the court first asked the mother's counsel if he had any witnesses to present, and it was only after counsel responded in the negative that the court closed the proceedings. We therefore conclude that there is no evidence that *Page 57 
the trial court improperly prejudged the case and thereby denied the mother her right to a fair trial.
The mother's next assertions of error concern the trial court's order and findings. The court's order is, in part, as follows:
 "The Court finds [a conspiracy] to physically abuse the said child, Crystal Fortenberry, and that it would be in the best interest of the future welfare of said child that the mother and legal father be relieved of its custody. . . ."
The mother contends that the court's finding that a conspiracy existed to physically abuse Crystal was unsupported by the evidence. She asserts, therefore, that the court improperly based its order on a finding of conspiracy.
We agree with DPS that the court's use of the term "conspiracy" has no legal reference to a criminal or civil action but, rather, to the fact that the court concluded that both the mother and the legal father were responsible, actively or passively, for Crystal's injuries. The issue before the court was whether it was in the best interests of Crystal to remain in the custody of her parents. The court concluded that it was not. Any statements by the court showing the basis on which its conclusion is founded are not part of the judgment.Skinner v. Todd, 283 Ala. 279, 215 So.2d 721 (1968). Thus, the family court did not commit any error in stating that a conspiracy existed, since such a finding was not essential to the court's judgment. The mother's contentions with respect to this issue are without merit.
The mother next contends that the evidence was insufficient to support the court's order terminating her parental rights. We disagree.
A parent has a prima facie right to custody of its child; however, this right may be overcome where such custody is shown to be contrary to the child's best interests and welfare.Matter of Moore, 470 So.2d 1269 (Ala.Civ.App. 1985). In order to terminate parental rights, the court must apply a two-prong test. The court must first find from clear and convincing evidence that the child is dependent. Once the child is found dependent, the court must determine if less drastic measures than termination of parental rights exist. Matter of Burnett,469 So.2d 627 (Ala.Civ.App. 1985). The evidence in the record is sufficient to satisfy both prongs of the test.
In 1982 the mother left Crystal's legal father and went to California. She became pregnant by another man in California. The mother then returned to Alabama and began living with the legal father again. In September 1983 the mother contacted DPS to discuss placing her unborn child up for adoption. She told a DPS worker that she and the legal father were financially unable to care for the baby.
The baby, Crystal, was born on November 5, 1983. Crystal was never placed for adoption, although the mother contacted a DPS worker several times concerning Crystal's placement for adoption.
On December 4, 1983 the mother and father brought Crystal into the emergency room at Children's Hospital. Crystal was approximately one month old. Crystal had multiple burns and scratches on her body. She had a large, four-centimeter-circumferential, third-degree burn on her back. She was dehydrated, malnourished, and suffered a severe ear infection. She also had a broken arm.
Dr. Davis, a pediatrician who treated Crystal at Children's Hospital, testified that some of the burns on Crystal's hands and buttocks looked like cigarette burns. He testified that the round burn on Crystal's back might have been caused by a hairdryer. The mother told Dr. Davis that the cigarette burns on Crystal's body were caused by Crystal grabbing lit cigarettes and rolling on ashes. The mother also stated that Crystal's back was burned by steam from the shower. Other witnesses provided testimony similar to Dr. Davis's.
The testimony at trial showed that both the mother and father were present during the time Crystal sustained her injuries. *Page 58 
The mother testified that the legal father mistreated Crystal; he testified that the mother harmed Crystal.
Courts consider many factors in deciding what is in the best interest of a child in making a custody decision. These factors include the "conduct of the parents toward the child, family environment, health of the child, physical and emotional abuse of the child, abandonment of the child, love of and interest in the child by the parents, and activities of the parents that would be detrimental to the safety and welfare of the child."Miller v. Alabama Department of Pensions Security,374 So.2d 1370 (Ala.Civ.App. 1979).
On appeal to this court the ore tenus rule applies, so that the decision of the trial court will not be set aside unless it is so contrary to the evidence as to be plainly and palpably wrong. Williams v. State Department of Pensions Security,460 So.2d 1348 (Ala.Civ.App. 1984).
The record clearly shows that Crystal was subject to abuse and neglect from one or both of her parents. Crystal was not well taken care of, as evidenced by the fact that she was dehydrated and malnourished. DPS made several attempts to locate relatives who could take care of Crystal, but these attempts were unsuccessful. Considering the above and the possibility that Crystal might suffer life-threatening neglect and abuse if returned to her mother, we conclude that no viable alternative existed to termination of the mother's parental rights. We conclude also that DPS presented clear and convincing evidence that Crystal was a dependent child and that her best interests would not be served by remaining in her mother's custody.
Next, the mother contends that the trial court committed reversible error by improperly considering photographs of Crystal's injuries since they were never entered into evidence. A review of the transcript shows, however, that the photographs were offered and introduced into evidence after the court specifically overruled opposing counsel's objections to their introduction of these photographs and denied counsel's motion to exclude these photographs. The photographs were, therefore, properly before the court. Whitlow v. Moore, 246 Ala. 472,21 So.2d 253 (1945); Reed v. Sears, Roebuck Co., 44 Ala. App. 506, 214 So.2d 857, cert. denied, 283 Ala. 717, 214 So.2d 861
(1968); Arrick v. Fanning, 35 Ala. App. 409, 47 So.2d 708
(1950).
Lastly, the mother contends that the court abused its discretion by allowing two doctors, Dr. Rogers and Dr. McCraw, to give expert testimony.
The decision to allow a particular witness to testify as an expert is a matter within the sound discretion of the trial court and will not be disturbed on appeal except for palpable abuse. Thurman v. Thurman, 454 So.2d 995 (Ala.Civ.App. 1984).
Dr. Rogers is a board-certified pediatrician and Dr. McCraw is a licensed physician serving his residency in pediatrics at Children's Hospital, Birmingham, Alabama. Both doctors had seen and treated Crystal and, based on their examinations of Crystal, testified as to their findings.
The court did not abuse its discretion in permitting Dr. Rogers and Dr. McCraw to testify as experts.
After a thorough review of the record, we conclude that the family court properly terminated the mother's parental rights in and to her child, Crystal, and that no irregularities or errors occurred in its proceedings. The mother's motion for new trial was properly denied. We therefore affirm the order of the family court.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur. *Page 59