L. CHARLES WRIGHT, Retired Appellate Judge.
After a hearing, the Juvenile Court of Montgomery County terminated the parental rights of Alyce Gilmore and Abraham Pettway in their child, Angela Gilmore, age 21 months. The court awarded permanent custody of Angela to the Alabama Department of Human Resources (DHR), with authorization to seek permanent placement in an adoptive home. The petition for custody filed by Mrs. Helen Belser was denied.
The mother and putative father appeal separately from this order.
The issue on appeal is whether there was clear and convincing evidence before the trial court to warrant the termination of parental rights.
Although natural parents have a prima facie right to custody of their children, such right can be overcome by clear and convincing evidence that removal from the custody of the parent is in the best interest of the child. In the Matter of Clingan, 471 So.2d 435 (Ala.Civ.App.1985). This court has previously stated:
“In determining what is in the best interests of a child, a trial court considers numerous factors including the sex and age of the child, the child’s emotional, social, moral, material, and educational needs, the parties’ age, character, stability, health, and home environments, the interpersonal relationship between the child and the parties, the effect on the child of a disruption of the custody arrangement, and the parties’ success in raising other children.”
Johnson v. Sparks, 437 So.2d 1308, 1309 (Ala.Civ.App.1983).
The record reveals that in October 1986, when Angela was four weeks old, DHR filed a petition of dependency, alleging that the mother could not provide proper care or supervision of the child. This petition was filed after the mother and putative father were involved in a physical altercation. The altercation resulted when the father became upset because the mother was spanking Angela for no apparent reason. The child was present during this incident, but was not harmed. The police were called to handle the situation.
Angela was adjudicated to be a dependent child after this incident. Temporary legal custody was placed in DHR, and physical custody was to remain in the mother, subject to the mother’s receiving counseling and parenting training. DHR was authorized to remove the child from the mother’s custody if it appeared that she was in imminent danger.
DHR obtained physical custody of Angela in November 1986, after the mother and the maternal grandmother were involved in a physical altercation. When the maternal grandmother attempted to hit the mother with “an iron chair,” she used Angela as a shield. Angela was accidentally hit in the back with the chair and sustained a small bruise on her lower back.
The mother, age 17, has been known to DHR since 1977 and has had numerous placements. She has had numerous behavioral problems in school and in the home. In an effort to change her behavior, she has been placed at several facilities for treatment and diagnostic purposes.
In February 1987, the mother was on runaway status from a DHR placement. In March 1987, she was placed in detention and committed to the custody of the Department of Youth Services (DYS). In April 1987, she assaulted one of her teachers and was transferred to Chalkville, a DYS facility. She was released from Chalkville in November 1987. Since her release she has moved several times.
The putative father, age 25, moves frequently and is irregularly employed. He has requested visitation with Angela on two occasions, each just prior to the hearing. He does not contribute to her support and never asks about her well-being or progress. He has not legitimated Angela through the courts, but has signed a form acknowledging paternity with the child support unit of DHR.
*915 In October 1987, DHR filed a petition requesting that all parental rights in Angela be terminated. A hearing on the petition was scheduled for December 9, 1987. At the request of the parties, the court granted a 60- to 90-day extension. The mother was ordered to maintain a job and seek individual counselling and parenting skills. The father was ordered to legitimate Angela.
In February 1988, Mrs. Helen Belser, the father’s aunt, filed a petition requesting that the court award her temporary legal custody of Angela. A hearing was held on both petitions on February 24, 1988.
At the hearing it was revealed that the father had not filed a petition to legitimate Angela until late afternoon on the day before the hearing. At the time of this hearing, no one had been served and the probate court had not made a decision. The mother had been employed at Captain D’s for several weeks during December 1987, but quit due to transportation problems. She had not actively sought new employment, although that was one of the requirements set out by the court when it granted the continuance of the December 1987 hearing.
The mother was ten to twelve weeks pregnant at the time of the hearing. Angela’s father is not the father of that child. The father of that baby is married to someone else, and the mother has no plans to marry him or the father of Angela. The mother’s continued immaturity was demonstrated when she refused to apply for Medicaid and when she created a scene because she did not want to attend classes in January 1988. At the time of the hearing, the mother was residing with Hattie Pettway, the father’s mother.
The father had been employed for about six weeks at the time of the hearing and was living in a rented room. He testified that he does not go to his mother’s home very often, since Angela’s mother lives there and she has such a temper that it causes problems between them.
The court must apply a two-prong test when considering whether to terminate parental rights. The first prong is whether there is clear and convincing evidence which establishes that the child is dependent. If dependency is established, the court must then decide whether less drastic measures exist. Fortenberry v. Alabama Department of Pensions & Security, 479 So.2d 54 (Ala.Civ.App.1985).
There is clear and convincing evidence in the record to support a finding that Angela is dependent. The DHR caseworker testified regarding the relative resources. She concluded that no suitable resource existed. However, the father argues that granting custody of Angela to his aunt, Helen Belser, was a less drastic alternative and that the trial court erred when it denied her petition.
The DHR caseworker testified that Angela’s adoptability is very high at the present time and that it will decrease as she gets older. She testified that Angela needs a permanent home now.
There was testimony that Hattie Pettway was upset by the situation and had requested that her sister, Helen Belser, file a petition requesting custody of Angela. Mrs. Belser did, in fact, file a petition in early February 1988. Although the mother stated that she had no problems with Mrs. Belser being granted temporary custody, she has previously told DHR caseworkers that she did not want the father’s family to be given custody of Angela because they would not provide satisfactory care. The father has changed his mind several times regarding which relative he wishes to be given custody of Angela.
The DHR caseworker testified that due to the mother’s continued involvement with the Pettway family, she might interfere with the care of Angela and create confusion for the child. The evidence indicates that the mother has a volatile temper. Hattie Pettway testified that her sister “tries to keep peace with everybody on both sides.”
We find that the trial court correctly determined that termination of parental rights and placement for adoption was the only viable alternative which would best serve the future welfare of Angela. Glo *916 ver v. Alabama Department of Pensions & Security, 401 So.2d 786 (Ala.Civ.App.1981).
This case is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and is hereby adopted as tha,t of the court.
AFFIRMED.
All the Judges concur.