INGRAM, Presiding Judge.
The Juvenile Court of Winston County, after an ore tenus proceeding, terminated the parental rights of the mother, Shelby Farley Glover, in her three children and, further, terminated the parental rights of Floyce Kevin Anderson in his six-year-old son, Steven Keith Anderson; terminated the parental rights of Keith Taylor in his two-year-old daughter, Linda Louise Farley; and terminated the parental rights of Greg Glover in his one-year-old daughter, Dana Marie Farley. These terminations were based in part on evidence that each parent was unable or unwilling to discharge his responsibilities toward his offspring. There was also evidence that each parent, in particular Floyce Kevin Anderson, had abandoned and neglected his child. Permanent legal custody of the three children was placed in the State Department of Human Resources (DHR). The mother and Greg Glover appeal, challenging the termination of their parental rights in all three children. Floyce Kevin Anderson also appeals, challenging the termination of his parental rights in his son, Steven Keith Anderson.
Two issues are presented for our review on appeal: (1) whether there was clear and convincing evidence before the juvenile court to support the termination of the mother’s and Glover’s parental rights; and (2) whether the trial court committed reversible error when it terminated Floyce Kevin Anderson’s parental rights.
A trial court is authorized to terminate parental rights only after it satisfies the following two-prong test. First, the trial court must find that the child is dependent, based upon clear and convincing evidence. After making a finding of dependency, the trial court must then find that there is no viable alternative other than the termination of the parent’s custodial rights. Wood v. State Department of *604 Human Resources, 523 So.2d 129 (Ala.Civ. App.1988).
A dependent child is defined as, among other things, one whose parent is unable to discharge his or her responsibility toward the child, one whose home appears to be an unfit and improper place, or one whose surroundings are such that his health appears to be endangered. Ala.Code 1975, §§ 12-15-l(10)(d), (f), and (k). A dependent child is also defined as one who may, “for any other cause, [be] in need of the care and protection of the state.” § 12-15-l(10)(m), Ala.Code 1975. This definition grants courts the authority to find a child dependent under the totality of the circumstances. Martin v. State, 502 So.2d 769 (Ala.Civ.App.1987).
It is well settled that the natural parent has a prima facie right to the custody of his or her child. However, in these eases, the child’s best interest takes precedence over the parent’s prima facie right. Benton v. State Department of Human Resources, 515 So.2d 1263 (Ala.Civ.App.1987). In order to determine the child’s best interest, the court must ascertain whether the parent is physically, financially, and mentally able to respond to the needs of the child. McConathy v. State Department of Human Resources, 510 So.2d 269 (Ala.Civ.App.1987). Factors which may be considered and examined to determine the parent’s ability to provide for the child include the parent’s past and present conduct and activities. Wallace v. Jefferson County Department of Pensions & Security, 501 So.2d 473 (Ala.Civ.App.1986); Landers v. Association for Guidance, Aid, Placement & Empathy of North Alabama, Inc., 472 So.2d 1055 (Ala.Civ.App.1985). If the court finds from clear and convincing evidence that a child is dependent, as defined in § 12-15-1, and that no viable alternatives exist, then the rights of the parent can be terminated pursuant to § 26-18-7(a), Ala.Code 1975 (1986 Repl.Vol.).
The mother is twenty-seven years old and has an eleventh-grade education. She has four children, ranging in age from one to six years. The children were fathered by four different men, one of whom the mother never married. We note that the mother’s second child was placed with his paternal grandparents prior to the institution of this termination proceeding. The mother is presently married to her third husband. Their relationship appears to be unstable and volatile.
The record reveals that the mother suffers from a severe case of emotional and mental instability. This instability appears to manifest itself in her housing situation, her living conditions, and her shaky marriage. There is undisputed evidence that she has moved repeatedly and resided with numerous people over the past six years. There is also evidence that she has consistently maintained filthy and unsanitary living quarters. Numerous witnesses gave testimony regarding her poor housekeeping skills, i.e., garbage on floors, dirty diapers, persistent odors of urine, and lack of utilities. In particular, there was testimony of people becoming physically ill from the stench emanating from an apartment from which she had been recently evicted.
Other witnesses gave testimony regarding the mother’s hysterical, disoriented, and suicidal behavior. In July 1987, she was committed to the custody of the Alabama Department of Mental Health. There she was diagnosed and treated for atypical depression. Since her release in October 1987, she has taken a drug to control her depression and has regularly attended counseling sessions. Although the mother’s doctor testified by deposition that her condition was in remission, he could not predict how she would behave if the children were returned to her custody.
The record indicates that Winston County’s Department of Human Resources (WCDHR) made reasonable efforts to rehabilitate the mother. From August 1986 until the termination hearing in 1988, a social worker visited with the mother on a regular basis and provided advice and assistance when necessary. The children were removed from the mother’s custody in March 1987, after reports of neglect were substantiated and after the mother failed to satisfactorily comply with two treatment *605 plans. There is evidence that she was advised of the changes she would have to make in her life in order to regain custody of her children. She was urged to seek employment and to go back to school.
The mother clearly failed to respond to WCDHR’s diligent efforts on her behalf. There was evidence that the mother disregarded treatment plans set up between her and WCDHR after the children were removed from her custody. Although there was testimony regarding her improved mental health, a home visit conducted one day prior to the termination hearing revealed squalid and dismal living conditions similar to those discovered back in August 1986. At this time, the mother’s trailer lacked, among other things, sanitary facilities. There was also evidence that the mother has not held any kind of job in nine years. Her present husband, Mr. Glover, has a history of sporadic employment. The mother and Mr. Glover thus have been forced to move on occasion because of their inability to pay the rent. Viewing the foregoing, it appears that the mother and Mr. Glover are unwilling to change their circumstances in the foreseeable future so as to provide a suitable environment for the children.
The record reveals that WCDHR sought less drastic alternatives than the termination of the mother’s parental rights. There was evidence that it explored other possible relative resources for the children. There was also evidence that an unrelated foster mother was willing to adopt all three children.
As noted, the evidence was presented to the trial court ore tenus. Its judgment is, therefore, presumed correct and will not be overturned on appeal unless it is found to be unsupported by the evidence so as to be plainly and palpably wrong. Landers, supra. Viewing the evidence in light of the attendant presumptions, we find that there was clear and convincing evidence to support the trial court’s termination of the mother’s parental rights.
We turn now to determine whether the trial court committed reversible error when it terminated Floyce Kevin Anderson’s parental rights. The record reveals that the mother and her first husband, Anderson, obtained a divorce shortly after their child was born in 1982. The record further reveals that neither Anderson nor any of his relatives have had any contact with the child since he was three to four months old. The child is now six years old. Since 1986, the child has lived with Linda Hammock. She testified that she serves as the child’s foster mother.
In 1984, Anderson was charged with sexually abusing a four-year-old girl. He pleaded guilty to this offense and was given an eight-year sentence. There was evidence that he was to be released from West Jefferson Correctional Facility in November 1988.
A four-day hearing was conducted in May 1988. Numerous witnesses testified on behalf of the state and the mother. No witnesses, however, testified on Anderson’s behalf, allegedly because they were called on short notice and were afraid of jeopardizing their jobs by taking any more time off for the hearing.
Anderson contends that the trial court could not determine whether any viable alternatives existed other than the termination of. his parental rights since his family members, who were unable to testify at the hearing, were allegedly willing and able to care for his son. This contention is without merit. We have held that
“[i]t is the duty of a party to have [his] witnesses present and available to testify at the beginning of the trial or to have made prior arrangements with the trial court to have certain witnesses placed on standby so that they could be produced on short notice.”
Fortenberry v. Alabama Department of Pensions & Security, 479 So.2d 54, 55 (Ala.Civ.App.1985). There is no evidence that Anderson met this obligation.
A trial court is granted discretionary authority to determine whether a trial should be halted or suspended in order to allow a party to produce a witness in court. Alonzo v. State ex rel. Booth, 283 Ala. 607, 219 So.2d 858 (1969). There is no evidence that the trial court abused its discretion in the instant case.
*606 Anderson also contends that the trial court denied him due process and equal protection under the law when it allegedly refused to allow him to present testimony of witnesses by deposition after the conclusion of the evidentiary hearing. He argues that his rights were clearly violated here since the trial court allowed the testimony of the mother’s witness, Dr. Nagi, to be introduced by deposition pursuant to § 22-50-22, Ala. Code 1975 (1984 Repl. Vol.), two months after the hearing was concluded.
We note in particular that the parties themselves agreed to allow the doctor’s testimony to be taken by deposition and entered into evidence after the hearing was concluded. More to the point, we note that this constitutional issue is not properly before us since Anderson did not raise it at trial. This court will not address issues raised for the first time on appeal. Williams v. Marcum, 519 So.2d 473 (Ala.1987).
The judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON and RUSSELL, JJ., concur.