18 So.3d 936 (2009)
S.D.P., as guardian ad litem for N.J.S., a minor
v.
U.R.S. and B.S.T.
2070977.
Court of Civil Appeals of Alabama.
March 13, 2009.
S.D.P., pro se.
Submitted on appellant's brief only.
THOMPSON, Presiding Judge.
U.R.S. ("the mother") filed a complaint seeking to terminate the parental rights of B.S.T. ("the father") to their child, N.J.S. ("the child"). In support of her complaint, the mother submitted a signed and notarized "consent and relinquishment of parental rights," in which the father consented to the termination of his parental rights to the child. The juvenile court appointed S.D.P. as the guardian ad litem to represent the child and scheduled a hearing on the mother's complaint. After receiving ore tenus evidence, the juvenile court entered a judgment on July 2, 2008, in which it terminated the father's parental rights to the child. The guardian ad litem, on *937 behalf of the child, timely appealed the termination judgment.
The father did not appear for the June 2008 termination hearing; the mother was the only witness who presented evidence at that hearing. The mother testified that she and the father had never married but that she had shared a home with the father after she became pregnant with the child. The child was born on December 10, 2007, and the mother continued to share a home with the father after the child's birth. The mother did not present evidence regarding how long she and the child had resided with the father following the child's birth. The allegations in the mother's May 2, 2008, complaint indicate that she and the child were no longer living with the father at the time that pleading was filed.
The mother testified at the June 2008 termination hearing that she and the child no longer lived with the father because the mother was concerned for her safety and for that of the child. According to the mother, the father had a problem with anger and had once pushed the mother while she was holding the child. The mother testified that, on another occasion, the father had choked her. The mother stated that she had called the police on two occasions after she had been abused by the father. The mother admitted that, to her knowledge, the father had never abused the child.
The mother testified that the father had informed her that he had a criminal record in at least one state. According to the mother, the father had been convicted of battery of his ex-wife in Minnesota; the record does not indicate whether that was a felony or a misdemeanor conviction. The mother testified that she believed that the father had been convicted of felonies in other states, but she later admitted that she was not familiar with the distinction between felonies and misdemeanors.
The mother also stated that the father had indicated to her that he had no desire to financially support the child. The mother explained that the father had three other children, two of whom lived with him, and that the father's sole source of income was his receipt of disability income (apparently Social Security disability benefits). Comments made by the juvenile court during the termination hearing indicate that it relied upon the allegations contained in the father's "consent and relinquishment of parental rights" that indicated that the father was not employed and that he was unwilling to financially support the child. The mother testified that she was employed and capable of supporting the child by herself.
On cross-examination by the guardian ad litem, the mother indicated that, because of her fear of the father, she would like to have the father out of her life. The mother testified that the father does not visit the child; neither the questioning nor the mother's testimony indicated the periods during which the father had not visited the child.
The Child Protection Act ("CPA"), § 26-18-1 et seq., Ala.Code 1975, governs cases involving the termination of parental rights.[1] Our supreme court has explained:
"Where, as here, the custodial parent petitions to terminate the parental rights of the noncustodial parent, the trial court's analysis consists of two *938 parts. [Ex parte Beasley,] 564 So.2d [950,] 954 [(Ala.1990)]. First, the trial court must determine whether grounds exist for terminating parental rights. 564 So.2d at 954. Grounds exist for terminating parental rights if the parent in question is `unable or unwilling to discharge [his] responsibilities to and for the child, or ... the conduct or condition of the parent[] is such as to render [him] unable to properly care for the child and ... such conduct or condition is unlikely to change in the foreseeable future.' Ala.Code 1975, § 26-18-7(a) (stating that, under such conditions, a court `may terminate the parental rights of the parent[]'). A trial court's order terminating parental rights must be based on `clear and convincing evidence, competent, material, and relevant in nature.' Ala.Code 1975, § 26-18-7(a).
"In determining whether such grounds exist, factors for the trial court's consideration include, but are not limited to, those grounds set forth in Ala.Code 1975, § 26-18-7. Beasley, 564 So.2d at 954. The [relevant] factors set forth in Ala.Code 1975, § 26-18-7, are as follows:
"`(a) ... In determining whether or not the parents are unable or unwilling to discharge their responsibilities to and for the child, the court shall consider, and in cases of voluntary relinquishment of parental rights may consider, but not be limited to, the following:
"`(1) That the parents have abandoned the child, provided that in such cases, proof shall not be required of reasonable efforts to prevent removal or reunite the child with the parents.
"`....
"`(3) That the parent has tortured, abused, cruelly beaten, or otherwise maltreated the child, or attempted to torture, abuse, cruelly beat, or otherwise maltreat the child, or the child is in clear and present danger of being thus tortured, abused, cruelly beaten, or otherwise maltreated as evidenced by such treatment of a sibling.
"`(4) Conviction of and imprisonment for a felony.
"`....
"`(b) Where a child is not in the physical custody of its parent or parents appointed by the court, the court, in addition to the foregoing, shall also consider, but is not limited to the following:
"`(1) Failure by the parents to provide for the material needs of the child or to pay a reasonable portion of its support, where the parent is able to do so.
"`(2) Failure by the parents to maintain regular visits with the child in accordance with a plan devised by the department, or any public or licensed private child care agency, and agreed to by the parent.
"`(3) Failure by the parents to maintain consistent contact or communication with the child.
"`....
"`(c) In any case where the parents have abandoned a child and such abandonment continues for a period of four months next preceding the filing of the petition, such facts shall constitute a rebuttable presumption that the parents are unable or unwilling to act as parents. Nothing in this subsection is intended to prevent the filing of a petition in an abandonment case prior to the end of the four-month period.'"
Ex parte J.E., 1 So.3d 1002, 1006-07 (Ala. 2008).
*939 On appeal, the guardian ad litem contends that the evidence presented to the juvenile court did not support its judgment terminating the father's parental rights; neither the mother nor the father has favored this court with a brief on appeal. The guardian ad litem contends that, although § 26-18-7 is not exhaustive in setting forth factors to be considered in determining whether to terminate a parent's parental rights, the mother failed to present clear and convincing evidence in support of any factors supporting the termination of the father's parental rights.
Before the juvenile court, the mother attempted to set forth evidence in support of several of the factors specifically enumerated in § 26-18-7; she testified regarding the father's physical abuse of her, the father's criminal history, and the father's failure to visit or support the child. See § 26-18-7(a)(1), (3), and (4), Ala.Code 1975. However, we agree with the guardian ad litem that there is no evidence indicating that the father abused the child at issue in this matter or that he abused the two children that are in his custody. See § 26-18-7(a)(3). Further, the mother's testimony regarding the father's criminal history was speculative at best, and that testimony does not establish that the father was convicted of or imprisoned for committing a felony. See § 26-18-7(a)(4).
The mother alleged in her complaint that the father had abandoned the child, as that term is defined in the CPA. In its judgment terminating the father's parental rights, the juvenile court specifically found that the father's conduct amounted to an abandonment of the child. Pursuant to § 26-18-7(c), Ala.Code 1975, a rebuttable presumption that a parent is unwilling or unable to properly act as a parent arises when the parent has abandoned the child for a period of four months.
In this case, the evidence presented by the mother does not indicate the duration of what she contends is the father's abandonment of the child. The mother testified that she and the child had lived with the father for some unspecified period and that, thereafter, the father had failed to support and visit the child. However, there is no indication in the record of when the mother and the child moved from the father's home. The father's consent to the termination of his parental rights is dated April 30, 2008; that consent was submitted in support of the mother's May 2, 2008, petition to terminate the father's parental rights, which indicates that the mother and the father were no longer living together. The July 2, 2008, termination judgment was entered less than four months later. Thus, there is no indication in the record that the July 2, 2008, termination judgment was entered after an abandonment by the father of the child for a period of at least four months. We must conclude, therefore, that the record does not demonstrate that the rebuttable presumption of abandonment of the child sufficient to justify the termination of the father's parental rights was triggered in this case. Given the foregoing, we must conclude that the mother did not present clear and convincing evidence in support of any of the grounds for termination of parental rights set forth in § 26-18-7, Ala.Code 1975.
Further, as the guardian ad litem contends, the only other basis upon which the mother sought to terminate the father's parental rights was her wish to have the father out of her life and the father's desire not to be required to contribute toward the support of the child. However, "[a] parent's parental rights cannot be terminated merely for the convenience of the parties." C.M. v. D.P., 849 So.2d 963, 965 (Ala.Civ.App.2002); see also In re Beasley, 564 So.2d 959 (Ala.Civ.App.1990) (same).
*940 In Ex parte Brooks, 513 So.2d 614 (Ala. 1987), our supreme court reversed a judgment terminating a father's parental rights when the parents preferred that the mother raise the son and that the father's parental rights be terminated. In doing so, the court held that, although the father's conduct might amount to abandonment pursuant to § 26-18-3(1) and § 26-18-7(c), the court would not allow the termination of the father's parental rights merely for the convenience of the parties. Ex parte Brooks, supra. The court explained its reasoning as follows:
"Our courts are entrusted with the responsibility of determining the best interests of children who come before them. When a child's welfare is threatened by continuation of parental rights, the law provides a means for terminating those rights. When, after consideration of all evidence before it, a court determines that termination of parental rights would not serve the best interest of a child, as in the present case, parental rights should not be terminated. Convenience of the parents is not a sufficient basis for terminating parental rights.
"Even if [the father] chooses not to establish contact with his son, [the child's] right to receive support from his father remains. The Child Protection Act of 1984, as we have noted, was not intended as a means for allowing a parent to abandon his child and thereby to avoid his obligation to support the child through the termination of parental rights. The courts of this State will not be used in the furtherance of such a purpose."
Ex parte Brooks, 513 So.2d at 617.
We cannot say that the record contains the requisite "clear and convincing evidence" of the existence of grounds justifying the termination of the father's parental rights. See Ex parte J.E., supra. The convenience or the desires of the parents may not serve as the sole basis for terminating a noncustodial parent's parental rights. Ex parte Brooks, supra. Given the foregoing, we conclude that the juvenile court erred in terminating the father's parental rights. Accordingly, the July 2, 2008, termination judgment is reversed.
REVERSED.
PITTMAN and THOMAS, JJ., concur.
MOORE, J., concurs specially.
BRYAN, J., dissents, with writing.
MOORE, Judge, concurring specially.
I concur that the judgment terminating the parental rights of the father should be reversed. I write specially to explain why I believe the juvenile court erred in concluding that the best interests of the child would be served by terminating the parental rights of the father.
Section 26-18-7(a), Ala.Code 1975, a part of the 1984 Child Protection Act ("the CPA"),[2] provides, in pertinent part:
"If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents."
*941 (Emphasis added.) By using the term "may," the statute does not require a juvenile court to terminate parental rights based on a finding that the statutory grounds for termination exist; it merely vests the juvenile court with the discretion to do so. See American Bankers Life Assurance Co. v. Rice Acceptance Co., 739 So.2d 1082, 1084 (Ala.1999) (citing Black's Law Dictionary 979 (6th ed.1990)) (stating that the word "may" ordinarily implies discretionary action or conduct).
Section 26-18-7 does not explicate on the factors a juvenile court should consider in exercising that discretion, but § 26-18-2, Ala.Code 1975, provides that the foremost purpose of the entire statutory scheme regulating the termination of parental rights is "to protect the welfare of children." Caselaw has since clarified that, in cases involving the termination of parental rights, the paramount consideration is the best interests of the child. See J.C. v. State Dep't of Human Res., 986 So.2d 1172, 1190-93 (Ala.Civ.App.2007) (discussing the traditional consideration of the best interests of the child in a termination-of-parental-rights proceeding). Hence, in deciding whether to terminate parental rights, a juvenile court should consider whether the severance of the parent's legal rights to the child will promote the best interests of the child. If the juvenile court determines, based on sufficient evidence, that the termination will serve the child's best interests, it should proceed to a hearing on the merits of the termination petition. If not, the juvenile court should reject the petition.
In most of the reported cases arising under the CPA, the petitioning party is the Department of Human Resources, which is typically seeking to terminate the parental rights of parents of children residing in foster care. In those cases, the statutory scheme expressly provides for successive hearings regarding the termination petition. First, the juvenile court must hold a permanency hearing to establish a plan for the permanent disposition of the custody of the child. See Ala.Code 1975, § 12-15-62(c); see also A.D.B.H. v. Houston County Dep't of Human Res., 1 So.3d 53, 68 (Ala.Civ.App.2008) (Moore, J., concurring in part and concurring in the result). At that hearing, the juvenile court must consider whether other viable alternatives to termination of parental rights exist and, if not, whether termination of parental rights will serve the best interests of the child. See § 12-15-62(c) ("The permanency hearing shall determine whether the plan will include placement in another planned permanent living arrangement in cases where the department has documented to the court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, be placed for adoption, or be placed with a fit and willing relative, or with a legal custodian."). If so, the juvenile court must then hold a second hearing, known as the adjudicatory hearing, to determine whether grounds for termination exist. See A.D.B.H., supra.
In J.C., supra, I stated that "the `best interests of the child' should [not] be considered in deciding whether grounds for termination exist," 986 So.2d at 1207 (Moore, J., concurring in the result), because, among other reasons, United States Supreme Court precedent establishes that "the best interests of the child [is] not a factor in the adjudicatory phase of a termination-of-parental-rights proceeding ...." Id. (citing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). For the same reasons asserted in my special writing in J.C., I adhere to the belief that a juvenile court should not decide whether the best interests of the child would be served by terminating parental *942 rights in the same phase of the proceeding that it determines whether grounds for termination exist. I recognize that the present statutory scheme does not provide explicitly for bifurcated hearings in cases in which the petitioner is a parent and the child is not residing in foster care. Hence, my argument for bifurcated hearings in cases like the present one is less compelling. Nevertheless, I note that the statutory scheme does not prohibit bifurcated hearings in cases in which a custodial parent files a petition to terminate the rights of a natural parent. Moreover, I believe that the goal of the CPA to promote the welfare of children while also protecting the rights of their parents would best be served by separating the best-interests and viable-alternatives inquiry from the adjudicatory phase of the hearing. See A.D.B.H., supra (explaining benefits to all parties of separating adjudicatory phase from all other phases of termination-of-parental-rights proceeding).
By first considering the best interests of the child in a separate inquiry, a juvenile court properly can focus initially on the effect of the proposed termination on the child's needs. The juvenile court obviously should contemplate all the factors traditionally considered in deciding what is in the best interests of the child, see Ex parte Devine, 398 So.2d 686, 696 (Ala.1981) (holding that, in deciding what is in the best interests of the child, fact-finder should consider, among other things, the emotional, social, moral, material, and educational needs of the child), but the foremost concern should be whether a termination of parental rights promotes the child's need for permanency and stability. See § 26-18-2 ("It is the purpose of this chapter to provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives ...." (emphasis added)). By focusing its attention solely on the effect of a potential termination on the child, a juvenile court can correctly exercise its discretion to determine whether it should terminate parental rights, leaving for later decision the question whether it can lawfully terminate parental rights.
In making the initial determination of what is in the best interests of the child, a juvenile court cannot be concerned at that point with the interests of the parents. No case illustrates that point better than Ex parte Brooks, 513 So.2d 614, 617 (Ala. 1987), overruled on other grounds, Ex parte Beasley, 564 So.2d 950 (Ala.1990). In Brooks, the parents of a three-month-old child, Mr. and Mrs. Stephenson, divorced mainly because Mrs. Stephenson would not accede to Mr. Stephenson's demand that she abort the child. 513 So.2d at 615. Following the divorce, Mr. Stephenson did not visit with or support the child, except for paying $100 toward the hospital expenses for childbirth. Id. Mrs. Stephenson wanted to terminate Mr. Stephenson's parental rights because Mr. Stephenson had abandoned the child, lacked stability, had displayed an ill temper, and disapproved of her choice of religion. Mr. Stephenson concurred that his parental rights should be terminated because he had no interest in maintaining a relationship with the child or in supporting the child. Id. The juvenile court denied the petition on the ground that there was no evidence indicating that Mr. Stephenson had harmed the child and because the child's future rights to support, parental affiliation, and inheritance would not be protected by the termination of Mr. Stephenson's parental rights. Id. This court reversed the juvenile court's judgment, concluding that Mr. Stephenson had abandoned the child as a matter of law and that *943 the abandonment justified termination of his parental rights. See In re Stephenson, 513 So.2d 612, 614 (Ala.Civ.App.1986).
Following our decision, the guardian ad litem of the child filed a petition for writ of certiorari in the Alabama Supreme Court, which the supreme court granted; in its opinion reversing this court's decision and rendering a judgment denying the termination of Mr. Stephenson's parental rights, the supreme court stated:
"Mrs. Stephenson asks for termination of her former husband's parental rights in order to avoid the possibility of future disagreements or a custody conflict with him concerning [the child]. Mr. Stephenson has shown absolutely no interest in his son and would escape any obligation to support [the child] if his parental rights were terminated. As appellant has ably argued, the 1984 Child Protection Act was not intended as a means for a parent to avoid his obligation to support his child. Were we to concur with the Court of Civil Appeals in this instance, we would satisfy the objectives of the parents at the child's expense.
"Before parental rights will be terminated, the Court must determine from clear and convincing evidence that the child is dependent and, after having made a finding of dependency, must determine whether there exists a remedy less drastic than termination of those rights. Clemons v. Alabama Dep't of Pensions & Sec., 474 So.2d 1143 (Ala. Civ.App.1985); Fortenberry v. Alabama Dep't of Pensions & Sec., 479 So.2d 54 (Ala.Civ.App.1985); Brand v. Ala. Dep't of Pensions & Sec., 479 So.2d 66 (Ala. Civ.App.1985). The Court of Civil Appeals made no finding of dependency in the present case and appears not to have considered alternatives less drastic than termination of Mr. Stephenson's parental rights.... No evidence was produced at trial, and no argument has been made, that Mr. Stephenson has harmed or has in any way interfered with Mrs. Stephenson's custody of the child. Termination of the father's parental rights in this case would seem to us to be an unnecessarily drastic action not supported by clear and convincing evidence. Although we agree that Mr. Stephenson's conduct toward his son may satisfy the criteria set forth in Ala. Code (1975), §§ 26-18-3 and 26-18-7(c), as constituting `abandonment,' termination of his parental rights appears to be overwhelmingly for the convenience of the parents. By mutual consent, Mr. and Mrs. Stephenson seek to waive [the child's] right to receive support from his father although the child would receive nothing in return.
"Our courts are entrusted with the responsibility of determining the best interests of children who come before them. When a child's welfare is threatened by continuation of parental rights, the law provides a means for terminating those rights. When, after consideration of all evidence before it, a court determines that termination of parental rights would not serve the best interest of a child, as in the present case, parental rights should not be terminated. Convenience of the parents is not a sufficient basis for terminating parental rights.
"Even if Mr. Stephenson chooses not to establish contact with his son, [the child's] right to receive support from his father remains. The Child Protection Act of 1984, as we have noted, was not intended as a means for allowing a parent to abandon his child and thereby to avoid his obligation to support the child through the termination of parental rights. The courts of this State will not *944 be used in the furtherance of such a purpose."
Ex parte Brooks, 513 So.2d at 616-17.
As Ex parte Brooks illustrates, the best interests of a child do not always correspond with the best interests of the parents of that child. When those interests diverge, a juvenile court should base its initial determination of whether it should proceed with a termination of parental rights solely on the best interests of the child. Simply put, the juvenile court should not only avoid basing its decision to proceed to an adjudicatory hearing on a petition to terminate parental rights on the best interests of the parent, it should not even allow that factor to have any bearing on the decision. That a parent may be freed of an unwanted relationship with the child, released from his or her obligation to support the child, or disentangled from a harmful relationship with the other parent are not appropriate bases for proceeding to adjudicate a petition to terminate parental rights.
The facts of this case are strikingly similar to those in Ex parte Brooks. As in Brooks, the parents in this case, who were never married, separated shortly after the birth of the child. The mother testified that the father had never harmed the child, but that he simply did not want to maintain a relationship or support the child. In an affidavit, the father concurs that he does not intend to forge a relationship with the child or to provide for the support of the child. The mother wants her petition granted to avoid future custody problems and to assure that her violent relationship with the father does not continue. When asked numerous times how the granting of her petition would benefit the child, the mother basically could not provide any answer. The mother testified that she does not need the father's financial support because she maintains steady employment and can provide for the child. However, the mother could not explain why it would serve the best interests of the child to deprive the child of further support. I agree with Judge Bryan's dissent insofar as he concludes that the evidence is undisputed that the father has abandoned the child, 18 So.3d at 945 (Bryan, J., dissenting), but, under Ex parte Brooks, that fact alone does not warrant termination of the father's parental rights.
Recently, in M.D.C. v. K.D., [Ms. 2070465, Aug. 15, 2008] ___ So.3d ___ (Ala.Civ.App.2008), a majority of this court determined that a judgment terminating parental rights impliedly terminates the parental duty of support. Although I dissented in that case, unless and until M.D.C. is overruled, the law stands that the juvenile court's judgment terminating the parental rights of the father relieves him of any duty to financially support the child. Clearly, that aspect of the judgment does not benefit the child. I cannot discern any other benefit the child will receive from the termination of the father's parental rights. The juvenile court specifically found that it would be in the child's best interest to have the father's parental rights terminated "so that she will benefit from a stable and permanent home." However, the record contains no evidence indicating that the stability and permanency of the child's custodial situation is threatened. In fact, the record discloses that the father totally acquiesces to the mother's custody and that he does not intend to ever disrupt that custodial arrangement. The record indicates that the continuation of the father-child relationship does not currently affect the stability and permanency of the child in any manner. Although a time may come when the maintenance of the legal relationship between the father and the child interferes with the child's permanency, e.g., when *945 another person seeks to adopt the child, that contingency has not yet occurred and may never occur.
As the guardian ad litem correctly argues in his brief to this court, when deciding the best interests of the child, the juvenile court should conclude that parental rights should be terminated only when no other viable alternative exists. See Ex parte Beasley, supra. In this case, the only reason the mother gave for seeking to terminate the parental rights of the father was to secure herself from domestic violence. That goal may be achieved without terminating the parental rights of the father and absolving him of any duty to support the child. See Ala.Code 1975, § 30-5-7(d) (authorizing circuit court to enter final order restraining a perpetrator of abuse from threatening or committing future acts of abuse while also maintaining the perpetrator's duty of support).
Because no evidence supports the juvenile court's determination that the best interests of the child will be promoted by terminating the parental rights of the father, and because overwhelming evidence indicates that the judgment was entered solely for the convenience of the mother and the father, I believe the juvenile court erred in proceeding to even determine whether grounds existed to terminate the parental rights of the father. Therefore, I concur that the judgment is due to be reversed.
BRYAN, Judge, dissenting.
I respectfully dissent. Alabama Code 1975, § 26-18-7(a)(1), provides that one ground for terminating parental rights is abandonment of the child by the parent. The juvenile court based its judgment terminating the father's parental rights on, among other things, its finding that the father had "abandoned the child as defined in [Ala.Code 1975, § 26-18-3(1)], and ha[d] failed to provide any meaningful emotional or financial support" for the child.
Section 26-18-3(1) defines "abandonment" as:
"A voluntary and intentional relinquishment of the custody of a child by a parent, or a withholding from the child, without good cause or excuse, by the parent, of his presence, care, love, protection, maintenance or the opportunity for the display of filial affection, or the failure to claim the rights of a parent, or failure to perform the duties of a parent."
I conclude that clear and convincing evidence supports the juvenile court's finding that the father had abandoned the child. The mother testified that the father "had no desire to take care of [the child]" and that the father neither visited nor "c[a]me around" the child; that evidence was undisputed. Furthermore, the juvenile court received no evidence indicating that the father had "good cause or excuse" for withholding from the child his "presence, care, love, protection, [and] maintenance...." See id. The juvenile court found that the child's best interest would be promoted by terminating the father's parental rights; because clear and convincing evidence establishes that the father, in every manner articulated under § 26-18-3(1), had abandoned the child, I cannot conclude that the juvenile court erred in terminating the father's parental rights. Accordingly, I would affirm the juvenile court's judgment.
NOTES
[1] The CPA has been revised and reorganized by Act No. 2008-277, Ala. Acts 2008, which is applicable to actions involving the termination of parental rights decided on or after January 1, 2009. The judgment at issue in this case was entered before the effective date of the revisions set forth in Act No. 2008-277, and, accordingly, in addressing the merits of this appeal, we have applied the former version of the CPA.
[2] See note 1 in the main opinion.